UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

VINCENT BLASIO,

                        Plaintiff,

    v.                                      **DECISION AND ORDER**
                                              04-CV-653S

NEW YORK STATE DEP'T OF CORRECTIONAL
SERVICES, NEW YORK STATE DEP'T
OF CIVIL SERVICE, and NEW YORK STATE
OFFICE OF THE STATE COMPTROLLER,

                        <u>Defendants.</u>

## I. INTRODUCTION

In this case, Plaintiff Vincent Blasio alleges that Defendants refused to allow him to return to work as a corrections officer for a brief period, mistakenly believing that he had contracted hepatitis. Plaintiff seeks relief under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, <u>et</u> <u>seq.</u>, ("Rehabilitation Act") and New York Executive Law § 296 ("Human Rights Law"). Currently before this Court is Defendants' Motion to Dismiss the Complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' Motion is granted.

## II. BACKGROUND

### A. Factual History

The following facts, which are alleged in the Complaint, are assumed true for purposes of the instant motion. At all times relevant, Plaintiff has been employed as a corrections officer for the New York State Department of Correctional Services ("DOCS") at the Gowanda Corrections Facility. (<u>Compl.</u>, ¶¶ 6, 8). DOCS, the New York State Department of Civil Services ("DCS"), and the New York State Office of the State Comptroller ("OC") are recipients of financial assistance within the meaning of the

Rehabilitation Act. (Id. at 5). On or about June 21, 2002, Plaintiff was suffering from flu-like symptoms, and reported to his physician who initially diagnosed him with acute hepatitis. (Id. at ¶ 9). A few weeks later, Plaintiff's physician changed his diagnosis from hepatitis to "gall bladder." (Id. at ¶ 9).

On or about July 15, 2002, Plaintiff notified Defendants that he could return to work without restrictions on July 16, 2002. (Id. at ¶ 10). On July 16, 2002, Plaintiff personally delivered a doctor's note confirming his unconditional medical release for work. (Id. at ¶ 11). Defendants, however, advised him that he would not be permitted to return to work until he was seen by a state doctor. (Id. at ¶ 11). Also on July 16, 2002, Plaintiff contacted Defendants' personnel office and was informed that he could not return to work because he had been diagnosed with hepatitis. (Id. at ¶ 13). He was advised to get a note from his doctor verifying that he did not, in fact, have hepatitis. (Id. at ¶ 13). A note from Plaintiff's doctor was faxed to Defendants' personnel office that same day. (Id. at ¶ 13). Nonetheless, Defendants informed Plaintiff on July 17, 2002, that he was not cleared to return to work until he saw a New York State doctor for an employee health service exam. (Id. at ¶ 14). On July 19, 2002, Defendants contacted Plaintiff and informed him that he could return to work for his regularly scheduled shift. (Id. at ¶ 15). This action ensued.

**B.      Procedural History**

Plaintiff commenced this case on August 10, 2004, by filing a Complaint in the United States District Court for the Western District of New York. On September 1, 2004, Defendants filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(1), 12(b)(2), and 12(b)(4)-(6) of the Federal Rules of Civil Procedure.[1] This Court heard oral argument on October 29, 2004, and reserved decision at that time.

---

[1] Defendants filed a Memorandum in Support of the Motion to Dismiss. (Docket No. 4). Plaintiff filed an untimely Response in Opposition to Defendants' Motion to Dismiss. (Docket No. 6)

### III. DISCUSSION AND ANALYSIS

Plaintiff asserts two causes of action against the Defendants. In the first cause of action, brought pursuant to section 504 of the Rehabilitation Act, Plaintiff alleges that Defendants precluded him from working between July 16, 2002 until July 19, 2002, based on a false perception that he had a disability, to wit, that he had contracted hepatitis. In his second cause of action, Plaintiff asserts the same facts and seeks relief under the New York Human Rights Law.

Defendants primarily argue that both causes of action should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and under Rule 12(b)(5) for insufficiency of service of process.[2] Specifically, Defendants contend that the Complaint must be dismissed because: (1) Defendants are immune from suit pursuant to the Eleventh Amendment; (2) the Complaint fails to state a claim upon which relief can be granted against the DCS and the OC; and (3) Plaintiff did not properly serve the Defendant state agencies. This Court will address each argument in turn.

### A.   Eleventh Amendment Immunity

The Eleventh Amendment of the Federal Constitution provides in relevant part that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. The significance of the Eleventh Amendment is not what it provides in its text, but rather, the larger "background principle of state

---

[2]   Defendants also argue that the Complaint should be dismissed for lack of personal jurisdiction under Rule 12(b)(2), and for insufficiency of process under Rule 12(b)(4).

sovereign immunity" that it confirms.  Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn 280 F.3d 98, 107 (2d Cir. 2001) (quoting Seminole Tribe of Fla. v. Forida, 517 U.S. 44, 72, 116 S. Ct. 1114, 1131, 134 L. Ed. 2d 252 (1996)).  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."  Bd. of Tr. of Univ. of Alabama v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955, 962, 148 L. Ed. 2d 866 (2001).

This guarantee, however, is not absolute.  The Supreme Court has recognized that Congress may abrogate the immunity "when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'"  Garrett, 531 U.S. at 363 (quoting Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73, 120 S. Ct. 631, 640, 145 L. Ed. 2d 522 (2000)).  When providing funds from the federal purse, for example, Congress may require states to waive their immunity from suit as a condition of accepting those funds. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 686-87, 119 S. Ct. 2219, 2231, 144 L. Ed. 2d 171 (1987); South Dakota v. Dole, 483 U.S. 203, 207, 107 S. Ct. 2793, 2795-96, 97 L. Ed. 2d 171 (1987).

Section 504 of the Rehabilitation Act prohibits a federal grant recipient from discriminating against an otherwise qualified handicapped individual solely because of that disability.  Byrne v. Board of Educ., School of West Allis-West Milwaukee, 979 F.2d 560, 563 (7th Cir.1992).  The Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."  29 U.S.C. § 294.  In

1986, Congress amended the Act to explicitly provide that "a state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." 42 U.S.C. § 2000d-7.

In September 2001, the Second Circuit Court of Appeals acknowledged in <u>Garcia v. Suny Health Sciences Center of Brooklyn</u> that this amendment constitutes a clear and valid "expression of Congress' intent to condition acceptance of federal funds on a state's waiver of its Eleventh Amendment immunity." 280 F.3d at 113.  Nonetheless, the Second Circuit reasoned:

> [W]e are unable to conclude that New York in fact waived its sovereign immunity against suit under § 504 when it accepted federal funds for SUNY. At the time that New York accepted the conditioned funds, Title II of the ADA was reasonably understood to abrogate New York's sovereign immunity under Congress's Commerce Clause authority. . . . Since, as we have noted, the proscriptions of Title II and § 504 are virtually identical, a state accepting conditioned federal funds could not have understood that in doing so it was actually abandoning its sovereign immunity from private damages suits, since by all reasonable appearances state sovereign immunity had already been lost.

<u>Garcia</u>, 280 F.3d at 114.  By continuing to accept federal funds after <u>Garcia</u>, however, New York knowingly waived its immunity for Rehabilitation Act claims, which are based on post-<u>Garcia</u> events.  <u>See</u> <u>Denmeade v. King</u>, No. 00-CV-407E(F), 2002 WL 31018146, at *3 (W.D.N.Y. Aug. 1, 2002); <u>see</u> <u>also</u> <u>Cardew v. New York State Dep't of Corr. Servs.</u>, No. 01 Civ. 3669, 2004 WL 943575, at *8 (S.D.N.Y. Apr. 30, 2004) (stating that "New York appears to have continued to accept federal funds, and thus, in the wake of *Garcia,* has waived its sovereign immunity from suit under Section 504 of the Rehabilitation Act.").  Since Plaintiff's claim under the Rehabilitation Act arises from events which occurred in

July 2002, the Eleventh Amendment does not bar his federal claim, and therefore, it will not be dismissed on that basis.

On the other hand, there is no basis for finding that New York State waived its Eleventh Amendment immunity with respect to claims brought under the Human Rights Law. Jungels v. State Univ. College of New York, 922 F. Supp. 779, 784 (W.D.N.Y. 1996), aff'd, 112 F.3d 504, 1997 WL 219065 (2nd Cir. 1997); Cassells v. Univ. Hosp. at Stony Brook, 740 F. Supp. 143, 147-48 (E.D.N.Y.1990). As such, Plaintiff's state law claim against Defendants is apparently barred by the Eleventh Amendment. See Phipps v. New York State Dept. of Labor, 53 F. Supp. 2d 551, 558 (N.D.N.Y. 1999) (citing Pazamickas v. New York State Office of Mental Retardation and Dev. Disabilities, 963 F. Supp. 190, 196 -197 (N.D.N.Y. 1997)). Accordingly, this particular claim will be dismissed with prejudice as against all Defendants.

**B.     Failure to State a Claim Against Defendants New York State Department of Civil Service and New York State Office of the State Comptroller**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A court may dismiss an action pursuant to Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)). When a court decides a Rule 12(b)(6) motion, all well-pleaded allegations are assumed true and construed in the non-moving party's favor. Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997) (citing Hosp. Bldg. Co. v. Trustees of Rex

Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 1850, 48 L. Ed. 338 (1976)).  In the context of such a motion, "[t]he issue is not whether a plaintiff will or might ultimately prevail on her claim, but whether she is entitled to offer evidence in support of the allegations in the complaint."  Hamilton Chapter, 128 F.3d at 62 (citation omitted).

To state a claim under the Rehabilitation Act, a plaintiff must allege that: (i) he is an individual with a disability; (ii) that he was "otherwise qualified" for the benefit sought or for participation in the program; (iii) that he was excluded from participation in, or denied the benefit of the program or activity, or subject to discrimination "solely by reason of" his disability; and (iv) that the "program or activity receives federal financial assistance."  29 U.S.C. § 794(a); Beckford v. Portuondo, 151 F. Supp. 2d 204, 221 (N.D.N.Y. 2001).  An "individual with a disability" is defined under the Act as a person who has a "physical or mental impairment, which substantially limits one or more of such person's major life activities; has a record of such an impairment; or is regarded as having such an impairment."  29 U.S.C. § 705(20)(B); Beckford, 151 F. Supp. 2d at 221.  For the purposes of the Act, the term "program or activity" means "all of the operations of a department, agency . . . or other instrumentality of a State or of a local government;" or "the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government."  29 U.S.C.A. § 794.

In his Complaint, Plaintiff alleges that the Defendant state agencies, recipients of federal funding, collectively refused to allow him to return to work at the Gowanda Correctional Facility between July 16, 2002, and July 19, 2002, "on account of their perception of his having a disability."  (Compl., ¶ 19).  Plaintiff does not allege that the

DCS, the OC, or DOCS in particular, prohibited him from returning to work. Defendants argue that the facts alleged in the Complaint apparently, if not explicitly, relate solely to Plaintiff's communications with his employer, DOCS. As such, Defendants argue, the DCS and the OC are "remedial defendants" rather than necessary or proper parties to this action.[3]

However, drawing all reasonable inferences in favor of Plaintiff, as it must, this Court cannot conclude that Plaintiff can prove no set of facts as against the OC or the DCS that would entitle him to relief under the Rehabilitation Act. Plaintiff's allegations are broad enough to suggest that the OC, the DCS and DOCS were equally instrumental in barring his return to work despite his medical release, and that his preclusion was predicated solely on Defendants' mistaken but collective belief that Plaintiff had hepatitis. As such, this Court declines to dismiss Plaintiff's federal claim against the OC and the DCS based on their status as remedial defendants.

### C.    Insufficient Service of Process on Defendants

Federal Rule of Civil Procedure 4(j) provides that service upon a state agency or official shall be made by "delivering a copy of the summons and of the complaint to its

---

[3]     The term "remedial defendants" is borrowed from Hamilton v. New York State Dep't of Mental Hygiene, 876 F. Supp. 470, 474 (W.D.N.Y. 1994), in which the district court dismissed a plaintiff's claims under Title VII, ADEA and 42 U.S.C. § 1983 against several defendant state agencies, based on the following reasoning: "There is no question that Plaintiff has not alleged any causes of action as against the Remedial Defendants, and has not asserted that any of the Remedial Defendants had any personal involvement in the incidents leading up to this action, or that the Remedial Defendants acted in a supervisory manner or as an agent for the Defendants which allegedly directly discriminated against Plaintiff. . . . [Accordingly,] there is no factual basis . . . to connect these Defendants with a cause of action under these statutes." Defendants cite to this case in support of their argument that Plaintiff's claims must be dismissed as against the OC and DCS. In comparison to the instant matter, however, all of the statutes asserted in Hamilton require the personal involvement of a party. Unlike 42 U.S.C. § 1983, however, the Rehabilitation Act provides redress to disabled individuals for discrimination by a public entity, not individual defendants, and therefore does not implicate personal involvement. See e.g., Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1233 (S.D.N.Y. 2003).

chief executive officer" or by "serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant."  F̲e̲d̲.R.C̲i̲v̲.P. 4(j); Levy v. Rowland, 359 F. Supp. 2d 267, 273 (E.D.N.Y. 2005).  In turn, Section 307 of the New York Civil Practice Law and Rules provides that:

> Personal service on a . . . state agency, which shall be required to obtain personal jurisdiction over such an officer or agency, shall be made by (1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, and by personal service upon the state.

N.Y. C.P.L.R. § 307(2).

The record reflects that the Complaint in this matter was personally delivered to the Office of the New York State Attorney General in Buffalo, New York.  As Plaintiff conceded at oral argument,[4] this does not constitute proper service upon the Defendant state agencies under the New York Civil Practice Law and Rules. Apparently, Plaintiff attempted to effectuate service on the Defendant state agencies in the manner prescribed for service upon the *state* as set forth in N.Y. C.P.L.R. § 307(1),[5] and failed to properly serve Defendants in the manner prescribed for service on a *state agency* as specified in N.Y. C.P.L.R. § 307(2).  Accordingly, this Court will grant Defendants' motion and dismiss the

---

[4] At oral argument, Plaintiff's counsel admitted that he was not familiar with N.Y. C.P.L.R. § 307(2), which governs service on a state agency.  Moreover, when queried by this Court, Plaintiff's counsel conceded that DOCS, which was served in the same manner as the OC and the DCS, had not been served with the Summons and Complaint. (Tr. Oral Arg., 10/26/04).  In the view of this Court, counsel's statements constitute a clear concession that service was never properly effectuated on any of the Defendant state agencies.

[5] Section 307(1) states that service upon the state "shall be made by delivering the summons to an assistant attorney-general at an office of the attorney-general or to the attorney-general within the state." N.Y. C.P.L.R. § 307(1).

Complaint, including the remaining federal claim therein, as against all of the Defendants. This dismissal, however, is without prejudice to serve the Complaint in compliance with the applicable federal and state rules. <u>See, e.g.</u>, <u>Levy v. Rowland</u>, 359 F. Supp. 2d 267, 275 (E.D.N.Y. 2005) (holding that plaintiffs failed to effectuate service of process on state defendants in compliance with federal and state procedure, requiring dismissal of the complaint against said defendants).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. Plaintiff's state law claim is dismissed with prejudice as against all Defendants on Eleventh Amendment grounds. Further, Plaintiff's Complaint, including the remaining federal claim therein, is dismissed without prejudice as against all Defendants based on insufficiency of service of process.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 3) is GRANTED, consistent with the foregoing decision.

FURTHER, that Plaintiff's state law claim is dismissed with prejudice as against all Defendants.

FURTHER, that this Court declines to dismiss Plaintiff's federal Rehabilitation Act claim on Eleventh Amendment grounds.

FURTHER, the Complaint, including the remaining federal Rehabilitation Act claim therein, is dismissed without prejudice as against all Defendants based on insufficiency of service of process.

   FURTHER, that the Clerk of the Court shall take the steps necessary to close this case.

   SO ORDERED.

Dated: August 25, 2005
   Buffalo, New York            <u>/s/William M. Skretny</u>
                     WILLIAM M. SKRETNY
                     United States District Judge